## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| **DENNIS BOLDEN,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:08-CR-30** |
| | ) | **No. 2:09-CV-298** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION</u>

Dennis Bolden ("petitioner" or "Bolden"), a federal prisoner, has filed a pending "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 146]. The United States has responded in opposition, [Doc. 166]. By order entered on July 5, 2011, the Court determined that an evidentiary hearing was required as to one of the petitioner's claims, that is, Claim Two claiming ineffective assistance of counsel for failure to file a notice of appeal, [Doc. 168]. Counsel was appointed to represent the petitioner and an evidentiary hearing was conducted on October 26, 2011. The matter is now ripe disposition. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

## I.    Procedural and Factual Background

Bolden was one of five defendants indicted by the federal grand jury on April 8, 2008, [Doc. 3]. Petitioner was charged in five counts of the ten count indictment. He was charged in Count 1 with conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); in Count 2 with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); and in Counts 3, 4 and 5 with distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). Pursuant to a plea agreement signed by the defendant on July 20, 2008,  and

filed with the Court on July 31, 2008, [Doc. 40], the petitioner entered a guilty plea as to Count 1 of the indictment on August 11, 2008.

A presentence report ("PSR") was ordered. In the PSR, the probation officer determined Bolden's guidelines range for imprisonment to be 262 to 327 months. By statute, Bolden faced a mandatory minimum term of ten years up to a maximum term of life imprisonment. The PSR was disclosed to the parties on March 16, 2009, and petitioner filed a notice of no objections to the PSR on April 27, 2009, [Doc. 128].

A sentencing hearing was conducted by the Court on April 27, 2009. The government had previously filed a motion for downward departure, [Doc. 125], and recommended a downward departure of two levels to an advisory range for imprisonment of 210 to 262 months. The motion for downward departure was granted and the Court, adopting the government's recommendation, established an advisory guideline range of 210 to 262 months of imprisonment. The government then argued for a sentence at the bottom of the guideline range. The defendant, through counsel, also argued for the low end of the advisory range based upon his addiction to drugs and alcohol, his criminal history which, although extensive, was related to his addiction, and his age. The Court, however, varied from the advisory guideline range and imposed a sentence of 180 months of imprisonment to be followed by five years of supervised release. Judgment was entered on May 8, 2009, [Doc. 133]. No direct appeal was filed and the judgment became final. The instant § 2255 motion was then timely filed on April 26, 2010.

At the time of petitioner's guilty plea, he stipulated to certain facts in his plea agreement as follows:

> 4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may

be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a)     Through the testimony of several witnesses, to include co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that from approximately the month of May, 2002, and continuing to on or about July, 2005, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute more than fifty grams of a mixture or substance containing a detectible amount of cocaine base, a Schedule II controlled substance, within the Eastern District of Tennessee.

b)     In furtherance of the conspiracy, defendant Bolden distributed cocaine base and small amounts of cocaine HCL for co-conspirator Nathaniel Allen. Defendant Bolden allowed co-conspirators to use his property to distribute cocaine base and cocaine HCL, and to cook cocaine HCL into cocaine base.

c)     On April 24, 2003, a confidential informant met with defendant Bolden at his residence to purchase a quarter-ounce of cocaine HCL. In a recorded transaction, the informant purchased 4.8 grams of cocaine HCL from Bolden for $375.00.

d)     On May 1, 2003, the same confidential informant arranged to purchase a quarter-ounce of cocaine HCL from Bolden. In a recorded transaction, the informant met with Bolden at his residence to pick up the cocaine. Bolden called his supplier and arranged to get a quarter-ounce for the informant. Followed by surveillance agents, Bolden left his residence and traveled to a nearby residence. When Bolden returned to his residence, he sold 7.8 grams of cocaine HCL to the informant.

e)     On May 26, 2004, another confidential informant reported that he had seen defendant Bolden in possession of several ounces of cocaine a few days earlier, and that Bolden's supplier of cocaine was Nat Allen. Followed by surveillance agents, the informant traveled to Bolden's residence to purchase a quarter-ounce of cocaine. In a recorded conversation, the informant gave Bolden $300.00. Bolden took the money and left to pick up the cocaine in the informant's vehicle. He returned about a half-hour later and gave the informant the 9.8 grams of a white powder. Laboratory analysis on the substance was negative for any controlled substance.

f)     A cooperating individual reported that during the eighteen-month period between January, 2004, and July, 2005, defendant Bolden sold four to six 8-balls of crack cocaine per day for his supplier, co-conspirator Nathaniel Allen. Said co-conspirator also reported that the most he saw Bolden sell at one time was a one-half ounce package of crack cocaine and that Bolden also sold cocaine HCL. Also,

3

approximately two to three times a week totaling more than one hundred occasions, the cooperating individual picked up money from Bolden and transported the drug proceeds back to Allen. Conservatively, the cooperating individual reported that defendant Bolden distributed 7.5 kilograms of cocaine base for co-conspirator Allen.

g)     On October 7, 2005, defendant Bolden met with FBI agents and gave them a statement. In the statement, Bolden admitted that he had purchased 8-balls of crack cocaine from co-conspirator Nathaniel Allen on more than five occasions since 2003. Bolden also allowed Allen to use his garage to cut up cocaine. Allen had at least an ounce of cocaine base each time he came to his garage. Bolden additionally allowed Allen to cook powder cocaine into crack cocaine two or three times, approximately 1/2 to one ounce each time.

h)     Bolden further admitted that he sold cocaine base to three other individuals that he met through Allen. Bolden sold cocaine base to these individuals and delivered cocaine base and powder to them for Allen. Bolden estimated that he sold a couple of ounces to one of the above referenced individuals and brought the money back from the drug buys to Allen.

i)     Bolden also admitted that in 2003, he allowed co-defendant Alfred Crum to sell cocaine base from his property. Bolden stated that Crum came to his property once a week to sell cocaine. Generally, on a weekly basis, Bolden stated that Crum sold to a couple of customers from his residence. Crum paid Bolden in cocaine base for the use of his property.

j)     On 3-12-03, a confidential informant met with Bolden at his residence to purchase cocaine HCL. In a recorded transaction, the informant purchased 8.1 grams of cocaine HCL.

k)     On 3-18-03, a confidential informant met with Bolden again to purchase cocaine HCL. In a recorded transaction, the informant purchased approximately 12 grams of cocaine HCL.

[Doc. 40, ¶ 4, pp. 2-5].

## II.     Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, ..."  28 U.S.C. § 2255.   Under Rule

4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would

exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.    Analysis and Discussion

In his § 2255 motion, Bolden raises six claims of ineffective assistance of counsel which he states as follows:

> GROUND ONE:    MR. BOLDEN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLAITON OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS COUNSEL'S FAILURE TO PREPARE FOR TRIAL AND PRESSURING HIM INTO BELIEVING A GUILTY PLEA WAS HIS ONLY OPTION, CAUSED MR. BOLDEN TO ENTER AN INVOLUNTARY, UNKNOWING AND UNINTELLIGENT GUILTY PLEA;
>
> GROUND TWO:    MOVANT BOLDEN'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO FILE A TIMELY NOTICE OF APPEAL AS REQUESTED BY MOVANT FOLLOWING HIS SENTENCING HEARING;

GROUND THREE: MR. BOLDEN'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO SUBMIT WRITTEN OBJECTIONS TO THE U.S. PROBATION OFFICE OR ORAL OBJECTIONS TO THE U.S. DISTRICT COURT AT SENTENCING REGARDING THE <u>ERRONEOUS AMOUNT OF COCAINE BASE</u> ATTRIBUTED TO MOVANT BOLDEN IN THE PRESENTENCE INVESTIGATION REPORT AND ADOPTED BY THE U.S. DISTRICT COURT AT SENTENCING;

GROUND FOUR: THE U.S. DISTRICT COURT FAILED TO SUBSTANTIALLY COMPLY WITH THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 11 WHEN DETERMINING THERE WAS A FACTUAL BASIS FOR A PLEA OF GUILTY;

GROUND FIVE: THE DISTRICT COURT'S IMPOSITION OF A MANDATORY MINIMUM SENTENCE OF 180 MONTHS WAS ERRONEOUS WHERE THE RESULT, PARTICULARLY GIVEN THE DUBIOUS FACTUAL PREDICATE FOR THE SENTENCE AND IN LIGHT OF THE CRACK SENTENCING DISPARITY THAT CONGRESS IS SEEKING TO ELIMINATE, WAS ARBITRARY AND UNDULY PUNITIVE; AND

GROUND SIX: DEFENSE COUNSEL'S FAILURE TO DISCLOSE, REVIEW AND ANALYZE THE PRESENTENCE INVESTIGATION REPORT WITH MOVANT BOLDEN PRIOR TO HIS SENTENCING HEARING CONSTITUTES A VIOLATION OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, TITLE 18 § 3552(d).

### A.     Knowing And Voluntary Guilty Plea (Ground One)

A guilty plea is valid if entered voluntarily, knowingly, and intelligently; its validity is determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 749 (1970). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of a guilty plea. *Id*. at 755. Rule 11 of the Federal Rules of Criminal Procedure generally insures that a defendant pleading guilty understands the applicable constitutional rights, that the plea of guilty is voluntary with a full understanding of the nature of the crime charged and the

consequences of the guilty plea, and that a factual basis exists for the crime to which the plea is being offered. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1998). At the change of plea hearing in this case, the Court reviewed with Bolden the relevant provisions of the plea agreement and the rights he was waiving. The Court explained the charge and its elements and explained the consequences of Bolden's plea in terms of the possible length of sentence and supervised release. Bolden acknowledged that he understood the charge and the consequences of his plea and that he understood his constitutional rights, including his right to a jury trial, his right to confront and cross- examine witnesses and the government's burden of proof.

Indeed, the transcript of the sentencing hearing indicates the Court's detailed and painstaking compliance with Rule 11. Bolden was specifically advised that he was under oath and of the government's right, in a later prosecution for perjury or for making a false statement, to use any statement that the defendant made under oath, Fed. R. Crim. P. 11(b)(1)(A); [Doc. 164, Tr. of Change of Plea ("COP"), p. 3]; Bolden was advised of his right to plead not guilty and his right to persist in that plea, Fed. R. Crim. P. 11(b)(1)(B), [Doc. 164, Tr. of COP, p. 9], the right to jury trial, Fed. R. Crim. P. 11(b)(1)(C), [Doc. 164, Tr. of COP, p. 9], the right to be represented by counsel, the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses, Fed. R. Crim. P. 11(b)(1)(C),(D), and (E), [Doc. 164, Tr. of COP, pp. 9-10]; and that Bolden was waiving all of his trial rights if the Court accepted a plea of guilty, Fed. R. Crim. P. 11(b)(1)(F), [Doc. 164, Tr. of COP, p. 10].

Bolden acknowledged that he had been advised by his attorney as to the nature and meaning of the charges against him, Fed. R. Crim. P. 11(b)(1)(G), [Doc. 164, Tr. of COP, p. 6], including the elements of the offense which the government was required to prove beyond a reasonable doubt,[Doc.

164, Tr. of COP, p. 7], and he was advised as to the applicability of the mandatory minimum penalty and the maximum penalty to which he was exposed, Fed. R. Crim. P. 11(b)(1)(H) and (I), [Doc. 164, Tr. of COP, pp. 14-15]. Bolden was advised of the Court's authority to order restitution and the Court's obligation to impose a special assessment, Fed. R. Crim. P. 11(b)(1)(K) and (L), [Doc. 164, Tr. of COP, p. 7 & 15].[1] Bolden was meticulously advised that his sentence would be determined only after a PSR was prepared and of the Court's obligation to calculate and consider the applicable sentencing guideline range and the other factors under 18 U.S.C. § 3553(a), Fed. R. Crim. P. 11(b)(1)(M), [Doc. 164, Tr. of COP, pp. 5, 17-19]. Bolden was advised by the Court of the Court's authority to impose a life term of imprisonment in the case and that any term of imprisonment was non-parolable. Bolden acknowledged his understanding of those matters and indicated that he still wanted to plead guilty in the case. [Doc. 164, Tr. of COP, p. 19]. Bolden was also advised that under his plea agreement with the United States he had waived rights to appeal or to collaterally attack his conviction or resulting sentence and he acknowledged that he had fully discussed those waivers with his attorney. Fed. R. Crim. P. 11(b)(1)(N), [Doc. 164, Tr. of COP, pp. 16-17]. Based upon the Court's observation of Bolden at the change of plea hearing, and his answers to the Court's questions, the Court made a specific finding that he was competent to plead guilty and had done so knowingly and voluntarily. [Doc. 164, Tr. of COP, pp. 20-21].

Although Bolden's motion and the attached memorandum are somewhat rambling and difficult to understand, Bolden appears to make three arguments that his guilty plea was unknowing and involuntary. First, he asserts a lack of communication prior to the guilty plea with counsel; secondly,

---

[1]  The United States attorney advised the Court, on the record, that neither restitution nor forfeiture was an issue in the case and Bolden was not further advised of the Court's authority to order restitution.

he claims that counsel made a promise of 36 to 48 months imprisonment and that he would not have pleaded guilty but for that promise; and third, Bolden claims a general lack of understanding of the "exact nature of offense charged, or the factual basis for it." The Court will address these allegations separately.

Bolden alleges that after counsel was appointed, he made "months of continuous phone calls" to counsel without speaking to him. He further claims that he finally caught his attorney for " fleeting" conversation and that, despite promises to do so, he did not come to see him to discuss the matter thoroughly. Bolden claims he had no contact with his lawyer for approximately a month and a half until he suddenly appeared at 9:00 p.m. on a Sunday to discuss the offered plea agreement and that counsel never explained the advantages and disadvantages of taking the matter to trial. Further, Bolden claims that he could not read or write and did not understand the provisions of the plea agreement.

This claim fails for a simple reason. It is flatly contradicted by the record in the case. First of all, immediately after being advised that false answers could be used against him in a prosecution for perjury, petitioner was asked by the Court if he could "read and write without difficulty." His answer was: "Some, some, yes, sir." [Doc. 164, Tr. of COP, p. 3]. Bolden further acknowledged that he had been able to read the pleadings filed in the case or that they had been read to him. *Id.* Bolden was specifically asked by the Court if he had had sufficient time to discuss the case with his lawyer and, with the exception of some questions about sentencing, he unequivocally indicated that he had. The following exchange took place at the change of plea hearing:

> Q.     AND WITH THE EXCEPTIONS OF THE QUESTIONS YOU HAD ABOUT SENTENCING, HAVE YOU HAD SUFFICIENT OPPORTUNITY AT THIS TIME TO DISCUSS THIS CASE WITH YOUR LAWYER?
>
> A.     YES, I'VE --

> Q.    IN OTHER WORDS , HAVE YOU HAD SUFFICIENT
> OPPORTUNITY TO DISCUSS WITH HIM THE EVIDENCE
> AGAINST YOU AND THE NATURE AND MEANING OF THE
> CHARGE AGAINST YOU SO THAT YOU CAN MAKE AN
> INFORMED DECISION ABOUT WHETHER OR NOT TO ENTER
> INTO THE PLEA AGREEMENT THAT'S BEEN PRESENTED TO
> YOU BY THE GOVERNMENT?
>
> A.    YES.

*Id.*, p. 5.  Bolden further acknowledged that he had shared everything he knew about the case with his attorney, that his attorney had explained to him the nature and meaning of the charges and all words used in the indictment, that his attorney had advised him of the elements of the offense which must be proved by the government, that he had discussed possible defenses with his attorney and that he had "**read**" the plea agreement.  *Id.*, pp. 6-8.

Petitioner acknowledged that his attorney had explained all the terms and conditions of the plea agreement and that he himself fully understood all the terms of the agreement.  *Id.*, pp. 8-9.  Very importantly, Bolden was asked if he was satisfied with his "lawyer's representation of you in this case?," and he answered unequivocally: "Yes, I am."  *Id.*, p. 9.  In addition, as set forth above, Bolden entered into an extensive and detailed stipulation of facts in the case which he acknowledged, under oath, that he had read and understood.  He furthermore firmly acknowledged that he agreed with the government's summary as set out in the stipulation and that all of the facts contained in the stipulation of facts contained in his plea agreement were true.  *Id.*, pp. 12-13.    The following exchange between the Court and Bolden took place at the change of plea hearing:

> Q. ALL RIGHT. MR. BOLDEN, AS THE UNITED STATES
> ATTORNEY HAS JUST INDICATED, THERE IS CONTAINED IN
> YOUR PLEA AGREEMENT AT PARAGRAPH 4 A STIPULATION OF
> FACTS WHICH ARE OFFERED THIS AFTERNOON TO PROVIDE
> A FACTUAL BASIS FOR YOUR PLEA OF GUILTY; AND YOU'VE
> ALREADY TOLD ME THAT YOU READ THIS PLEA AGREEMENT,

BUT DID YOU READ PARAGRAPH 4 OF, THAT IS THE STIPULATION OF FACTS VERY CAREFULLY?

A. OKAY, YEAH. YES, YOUR HONOR. YES.

Q. ALL RIGHT. NOW, I KNOW THAT YOU'VE TOLD ME YOU HAVE SOME LIMITED EDUCATION, DID YOU HAVE ANY DIFFICULTY READING AND UNDERSTANDING THIS STIPULATION OF FACTS?

A. NO.

MR. FAIRCHILD: YOUR HONOR, MAY I INTERRUPT?

THE COURT: YES, SIR.

MR. FAIRCHILD: I ALSO, AS HE READ IT, I WOULD GO BACK AND READ TO HIM EACH PARAGRAPH, AND WE WOULD HAVE A KIND OF A QUESTION AND ANSWER PERIOD THERE THAT WE WOULD GO OVER EACH PARAGRAPH.

Q. IS THAT CORRECT, MR. BOLDEN?

A. YES.

Q. AND DO YOU AGREE WITH THE GOVERNMENT'S SUMMARY OF WHAT DID YOU IN THIS CASE AS SET OUT IN PARAGRAPH 4 OF YOUR PLEA AGREEMENT?

A. YES.

Q. ARE ALL OF THE FACTS THAT ARE CONTAINED IN PARAGRAPH 4 OF THIS PLEA AGREEMENT IN FACT TRUE?

A. YES.

Q. AND DO YOU STIPULATE HERE THIS AFTERNOON UNDER OATH THAT THE FACTS CONTAINED IN PARAGRAPH 4 OF YOUR PLEA AGREEMENT ARE IN FACT TRUE?

A. YES, SIR.

Q. AND, MR. BOLDEN, I NOTE HERE FROM YOUR PLEA AGREEMENT THAT THE FACTS STIPULATED TO IN

PARAGRAPH 4 OF YOUR PLEA AGREEMENT ARE SUBMITTED ONLY FOR THE PURPOSES OF YOUR GUILTY PLEA, AND THAT THESE FACTS DO NOT NECESSARILY CONSTITUTE ALL OF THE FACTS IN THIS CASE; DO YOU UNDERSTAND THAT?

A. YES.

Q. AND DO YOU UNDERSTAND THAT THERE MAY IN FACT BE OTHER FACTS RELEVANT TO SENTENCING WHICH THIS COURT WILL CONSIDER AT THE TIME OF YOUR SENTENCING IN THIS CASE?

A. YES, SIR.

*Id.*, pp. 12-14.

Although petitioner now, in essence, repudiates these statements made under oath at his change of plea hearing, he is bound by his prior statements. It is well settled that collateral relief is not available based upon mere allegations that contradict statements the petitioner made before the Court under oath in Rule 11 proceedings. *See Blackledge v. Allison*, 431 U.S. 63 (1997). A defendant is bound by admissions made at a change of plea hearing, even in the face of some evidence contradicting those statements. To do otherwise would condone the practice of defendants providing untruthful responses to questions during plea colloquies. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied*, 528 U.S. 847, 120 S. Ct. 121, 145 L. Ed. 2d 102 (1999). Where the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-7 (5th Cir. 1976) (quoting *Jackson v. United States*, 512 F.2d 772, 773 (5th Cir. 1975)).

Petitioner next argues that he was induced to plead guilty on "patently erroneous advice." More specifically, Bolden alleges that his attorney "promised and guaranteed" a term of 36 to 46 months of imprisonment if he accepted the government's offer, entered into the plea agreement, and pled guilty.

He further argues that he was pressured to accept the plea agreement because it was "imperative" that the United States Attorney's office be notified the next day or the deal would be withdrawn and he had no idea that it was the district judge who would make the final determination as to his sentence. He claims he was "tricked, hoodwinked and cleverly fooled by trial counsel."

This claim fails for the same reason as the prior claim. It is clearly contradicted by the record in the case.[2] Several excerpts from the change of plea hearing illustrate the absurdity of Bolden's claim. Defense counsel was specifically asked during the change of plea hearing whether he had made any representations to the defendant as to the sentence defendant might receive:

> THE COURT: MR. FAIRCHILD, HAVE YOU MADE ANY REPRESENTATIONS TO YOUR CLIENT AS TO WHAT SENTENCE THIS COURT MIGHT IMPOSE IN HIS CASE OTHER THAN TO GIVE HIM AN ESTIMATE OF HIS ADVISORY GUIDELINE SENTENCING RANGE AND TO DISCUSS WITH HIM THE APPLICABILITY OF THE MANDATORY MINIMUM TEN YEAR TERM OF IMPRISONMENT REQUIRED BY STATUTE?
>
> MR. FAIRCHILD: I'VE NOT MADE ANY REPRESENTATIONS OTHER THAN JUST BRIEFLY DISCUSS ESTIMATES, AND I RECALL MORE LIKE GUESSTIMATES, GIVEN WHAT WE'VE DISCUSSED ABOUT HIS CASE.
>
> Q. ALL RIGHT. MR. BOLDEN, FIRST OF ALL, DO YOU UNDERSTAND THAT ANY ESTIMATE GIVEN TO YOU BY YOUR ATTORNEY AS TO YOUR ADVISORY GUIDELINE SENTENCING RANGE IS SIMPLY HIS BEST ESTIMATE BASED UPON THE INFORMATION HE HAS AT THIS TIME?
>
> A. YES.
>
> Q. DO YOU UNDERSTAND THAT THIS COURT IS NOT

---

[2] Although the Court did not grant an evidentiary hearing as to this claim, trial counsel was asked at the evidentiary hearing about such a promise and he unequivocally denied having made such a promise. The Court finds counsel's testimony to be entirely credible, especially in view of all the other evidence in the record corroborating counsel's testimony.

BOUND BY YOUR LAWYER'S ESTIMATE AS TO YOUR
ADVISORY GUIDELINE SENTENCING RANGE?

A.     YES I UNDERSTAND.

[Doc. 164, Tr. of COP, p. 20]. Furthermore, petitioner acknowledged in both his plea agreement, [Doc.

40, ¶ 1.a) and under oath, that he was exposed to a mandatory minimum ten years and a maximum of life

imprisonment, and that he understood that absent a government motion for downward departure or other

extraordinary circumstance, the Court would "be required to impose at least the mandatory minimum

sentence of ten years of imprisonment which is set by statute." [Doc. 164, Tr. of COP, p. 14-15].

When Bolden expressed some hesitation during the change of plea hearing about whether or not

he had sufficient time to discuss the matter with his attorney, counsel explained to the Court that Bolden

had had some questions about his possible sentence. Upon that hesitation, the Court asked Bolden the

following:

Q.     MR. BOWL-DENY [sic], FIRST OF ALL, DO YOU
UNDERSTAND THAT NEITHER THIS COURT NOR YOUR
ATTORNEY CAN DETERMINE HERE TODAY WHAT YOUR
SENTENCE IN THIS CASE WILL ULTIMATELY BE?

A.     YES.

Q.     YOU WILL BE ADVISED AS TO WHAT THE MAXIMUM
PENALTY IS THE COURT CAN IMPOSE, BUT THE SPECIFIC
PENALTY CANNOT BE DETERMINED UNTIL AFTER A
PRESENTENCE REPORT IS DETERMINED; DO YOU
UNDERSTAND THAT?

A.     YES.

[*Id*., p. 5.]. Bolden acknowledged that he understood that the Court would take into consideration his

advisory guidelines sentencing range and all the other factors set forth at 18 U.S.C. § 3553(a) before

deciding on a sentence in the case. [ *Id*., pp. 17-18]. Maybe most importantly of all, Bolden

unequivocally acknowledged that he understood that the Court had the authority to impose a life term of imprisonment in his case. [*Id*. p. 19]. Under these circumstances, Bolden's claim that he was "promised and guaranteed" a term of 36 to 46 months pursuant to the plea agreement is not credible and is flatly contradicted by the record. His argument lacks any merit.

Finally, Bolden argues that he had no understanding of the "exact nature of offense charged, or the factual basis for it." This argument lacks merit as well. As set forth above, Bolden unequivocally acknowledged at his change of plea hearing that his attorney had explained to him the nature and meaning of the offenses charged against him, he acknowledged the charge he wished to plea guilty to in open court, he acknowledged his understanding of the elements of the offense which the government was required to prove, and he unequivocally stated that the factual stipulation contained in his plea agreement was true. Bolden's claim of lack of understanding simply lacks credibility.

B.     **Failure to File Notice of Appeal (Ground Two)**

In his motion, as supporting facts, Bolden alleges that "following the sentencing hearing conducted on April 27, 2009, he specifically instructed trial counsel Jefferson B. Fairchild, Esq. to file the necessary Notice of Appeal within ten (10) days with the Clerk of Court's Office, U.S. District Court. In addition to his verbal request, Movant wrote letter(s) to attorney seeking to be apprised of the sought after direct appeal as well as having several family members contact attorney Fairchild."

At the evidentiary hearing on October 26, 2011, Bolden testified that he had no discussion with his attorney prior to sentencing about his desire to file any appeal in the case and he acknowledged, contrary to the allegation contained in his motion, that he never verbally instructed counsel to file a notice of appeal. He testified that on the day of sentencing, he asked to talk to his attorney, who never came to see him, and that, three days after the sentencing hearing, he wrote a letter to counsel saying that

he wanted to appeal. Bolden could not produce a copy of the letter but testified that he had mailed a copy to his mother for safekeeping. His mother, who was also a witness at the evidentiary hearing, testified consistently but also could not produce a copy of the letter. Bolden testified that for several weeks after the sentencing hearing he made repeated calls to his attorney's office inquiring about the status of his direct appeal but was never able to talk to Mr. Fairchild.

Delta Jackson, the mother of petitioner, testified at the evidentiary hearing that she was present for Bolden's sentencing before this Court. After sentencing, according to her testimony, she was contacted by petitioner by letter and he told her that he had written to his attorney. Petitioner's letter asked his mother to get in touch with Mr. Fairchild. As a result, she left a message for him to call but did not get a return phone call. She did not leave a message about the reason for her call. Although her testimony at the evidentiary hearing did not go into the same degree of detail, an affidavit from petitioner's mother was attached to his memorandum in support of his motion. In that affidavit, Delta Jackson states that she received a letter from Bolden on or about May 2, 2009, which outlined his attempts to contact his attorney to notify him of his desire to file an appeal. The affidavit likewise states that she made several attempts to contact Mr. Fairchild "in regard to Dennis Bolden's case" but that he never returned her call. Attached to the affidavit of Delta Jackson is a handwritten letter dated April 30, 2009 which reads as follows:

4-30-09

Mother
      There are no minutes left on the cell phone. You need to put some more time on the phone so I can call you.
      I wrote to my lawyer and informed him to file and appeal on my sentence.
      I need you to also call him and make sure that he does this.
      I am mailing it on this date and only have ten days to appeal it.

> Until next Thursday the 7th of May.
>             This is the phone number!
>             423-272-2142
>             Jefferson Fairchild
>
>                                         I love you
>                                         Thank you
>             Make sure you keep this letter so I can prove that I wrote you and
> told you I had written him and informed him to file the appeal.

[Doc. 147, p. 42] Bolden never attempted to write to the clerk or to the Court concerning his interest in filing an appeal although he had been advised at the time of his sentencing that the clerk would file a notice of appeal for him if he requested.

Attorney Jefferson Fairchild, Bolden's appointed attorney, also testified at the evidentiary hearing. He denied that Bolden had asked him to come and see him after the sentencing hearing but simply thanked him as he left the podium. The only contact from Bolden came two or three months after sentencing by letter of July 6, 2009, which requested his files. Fairchild replied to the defendant's letter on July 14, 2009, and sent the requested documents. The first notice Fairchild had of any interest on the part of Bolden to appeal came with the filing of a letter sent to the Court by Bolden in August, 2009. [3] So far as Fairchild or any of his staff can determine, there were never any phone calls to his office or phone messages left by either Bolden or his mother subsequent to sentencing. Fairchild unequivocally stated that he would have filed a notice of appeal had he been requested by Bolden to do so or had any information to indicate Bolden's desire that an appeal be taken.

---

[3] On August 25, 2009, a letter addressed to the Court and dated August 19, 2009, was received by the clerk's office and docketed as document 142. The letter, from Bolden, referenced "Failure Of Defense Counsel Jefferson Fairchild, Esq. To File Direct Appeal As Instructed In Writing." In the letter, Bolden claimed that he had written to Fairchild with specific instructions to file a direct appeal and "this was only done in writing because my numerous attempts to contact Mr. Fairchild by phone proved unsuccessful." Bolden specifically requested that the Court provide assistance "in obtaining copies of the attorney/client work product presently in Mr. Fairchild's possession," and expressed concern that Fairchild "has forever forfeited my opportunity to file a direct appeal."

In the context of a failure by counsel to file a notice of appeal, the question of whether such failure constitutes ineffective assistance of counsel is governed by the rule set forth in *Roe v. Flores-Ortega,* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Id.* at 477. Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed. *Id.* at 483. If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes. *Id.* at 478. If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal. *Id.* If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult. *Id.* Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479 (emphasis in original).

An attorney has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) his client reasonably demonstrated an interest in appealing. *Id.* at 480. In making this determination, courts must take into account all the information counsel knew or should have known at the time. *Id.* Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights. *Id.* Because the failure to file a notice of appeal results, not in the denial of a fair proceeding, but in the denial of a proceeding all together, the prejudice prong of the *Strickland* test for ineffectiveness of counsel in this context requires the petitioner to demonstrate that, but for his counsel's omission, there is a reasonable probability that he would have

timely appealed. *Id.* at 480.

This is clearly not a case where petitioner's attorney had a duty to file a notice of appeal because he was actually requested by the petitioner to do so. In neither petitioner's motion nor his testimony at the evidentiary hearing does he claim that he ever specifically requested his attorney to file a notice of appeal in the case. He does allege, however, that he made every reasonable attempt to do so within days of the sentencing hearing itself. Even assuming that such reasonable efforts on the part of a criminal defendant to request that his attorney file a notice of appeal would be sufficient for the Court to grant him relief under § 2255 and order a belated notice of appeal, petitioner's claim in this case fails because his testimony and allegations are simply not credible.

First of all, petitioner's demeanor and testimony at trial convince the Court that his testimony is not credible. In addition, as set forth above, much of his testimony and allegations made in his motion and memorandum are flatly contradicted by the record. Admittedly, petitioner offers some proof that he was in fact attempting to notify his attorney of his desire to appeal. The proof offered, however, from family members is inherently suspect. The testimony of petitioner's mother at the evidentiary hearing was significantly different from her statements made in the affidavit filed in support of the motion and petitioner's daughter's affidavit only confirms that the petitioner told her that he had written a letter to his attorney and that he wanted to file an appeal in his case. Petitioner's allegation that he was promised and guaranteed a 36 to 48 month sentence if he pled guilty as well as his testimony that he did not understand the plea agreement also lead the Court to conclude that his testimony with respect to the letter sent to his attorney as well as his attempts to contact his attorney by phone are simply not credible. Furthermore, the Court finds it significant that neither Bolden nor his mother can now produce the most important document related to this issue, that is, the letter which Bolden claims he sent to counsel on

April 30, 2009. *See Odum v. United States*, 229 F.3d 1153 (Table), 2000 WL 1175598 (6th Cir. 2000) ("it is also noteworthy that, although Odum asserts that he provided counsel with a 20 page letter to help him perfect the appeal and that he filed a request for a belated appeal with the clerk of courts, he has not provided the Court with either document.")

Several other things also convince the Court that Bolden's claim that he sent his attorney a letter requesting that a notice of appeal be filed and that he made numerous calls to his attorney are simply not credible. First of all, Bolden's written pleadings in this case contradict his own testimony at the evidentiary hearing. Bolden's motion, [Doc. 146], alleges that he made a "verbal request" of his attorney and that he "wrote letter(s)" seeking to be apprised of the sought after direct appeal. Bolden did not claim at the evidentiary hearing that he had made any verbal request of his attorney to file a notice of appeal. In addition, Bolden testified at the evidentiary hearing that immediately upon sentencing he realized that he needed to appeal his conviction and that he asked his attorney to come and to talk to him about the case. In the letter written to the Court in August, 2009, Bolden says he decided it would be in his best interest to appeal "once I got back to the jail and started thinking about my future." He further states in his letter to the Court that he only wrote Mr. Fairchild with specific instructions to file a direct appeal "because my numerous attempts to contact Mr. Fairchild by phone proved unsuccessful." At the evidentiary hearing, Bolden did not testify about any attempt to contact his attorney by phone prior to writing his April 30, 2009 letter but rather testified that he first called his attorney about three weeks later after he got to Ocilla, Georgia. [4] He further testified that he made calls over about a two week period once he arrived at a Bureau of Prisons facility in Beckley, West Virginia. Significantly, in the August,

---

[4] The United States Marshal Service houses detainees post sentencing at a facility in Ocilla, Georgia, prior to their designation to a Bureau of Prisons facility.

2009 letter, Bolden does not ask the Court for any relief in the form of a belated appeal but rather simply asks the Court to order Fairchild to turn over attorney/client work contained in his file.

There is a second reason why Bolden's claim fails here, even if he wrote the claimed letter to his attorney on April 30, 2009.  Bolden was advised at the conclusion of the sentencing hearing on April 27, 2009, of his right to appeal and that the clerk of the court could prepare and file the notice of appeal for him.  He was specifically advised:

> Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, the Court advises you that you may have the right to appeal the conviction and/or sentence involved in this case.  A notice of appeal must be filed within ten days of the entry of the judgment.  If you request and so desire the Clerk of the Court can prepare and file the notice of appeal for you.

[Doc. 165, Tr. of Sent., p. 22].   Bolden clearly understood that a notice of appeal must be filed within ten days and yet he never made any timely attempt to contact the clerk of the court or the Court to express a desire that the clerk prepare and file the notice of appeal for him.  A prudent defendant, unable to communicate with his attorney, would have done just that.  Had the petitioner known immediately upon sentencing that he wished to appeal, as he claimed at the evidentiary hearing, he could simply have asked the Court to have the clerk file the notice of appeal for him at that time.  Even if he decided days later that he wished to have an appeal filed, he clearly knew how to contact the clerk and could just as easily have directed his letter to the clerk as to his appointed attorney.

As noted above, even if a defendant does not instruct counsel to file a direct appeal, counsel still has a duty to consult with the defendant about an appeal when reason exists to believe that (1) a rational defendant would want to appeal; or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  "In making this determination, courts must take into account all the information counsel knew or should have known." *Roe,* 120 S.Ct. at 1036.  A highly relevant factor in

this inquiry is whether the conviction follows a guilty plea because a plea reduces the scope of potentially appealable issues and also may indicate that the defendant seeks an end to judicial proceedings. *See id.*

From the testimony of Mr. Fairchild, it is clear that he carefully and fully advised the petitioner of his options before the entry of his guilty plea, including his right to appeal. Furthermore, the Court fully advised Bolden of the appellate waiver provisions of his plea agreement and assured his understanding of those provisions. In the plea agreement, the petitioner waived his right to file a direct appeal and the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack his conviction or sentence except that he retained the right to raise claims of ineffective assistance of counsel or prosecutorial misconduct *not known to the defendant by the time of the entry of the judgment*." [Doc. 40, p. 10] (emphasis added). [5] Not only that, petitioner's sentence was a below guidelines sentence which would be afforded a presumption of reasonableness on appeal, something especially significant in view of the fact that petitioner's only claim at the evidentiary hearing was that he wished to appeal his sentence in the case. He makes no mention of any other meritorious issue he might have had to raise on appeal nor is any apparent to the Court. Given that the unrebutted proof in the case establishes that petitioner's attorney never received any indication that the petitioner wished to file an appeal and that he had waived his right to a direct appeal in his plea agreement, it was not unreasonable for counsel to fail to consult with his client concerning an appeal immediately following the entry of judgment because, on the facts presented, no rational defendant would have desired an appeal.

For these reasons, petitioner's claim that his attorney was ineffective for not filing a notice of

---

[5]   This waiver of the right to file pleadings pursuant to 28 U.S.C. § 2255 arguably forecloses all of the remainder of petitioner's claims. In addition, any claim that his guilty plea was not knowingly and voluntarily entered is likely not cognizable in a § 2255 proceeding. *See Bousley v. United States*, 523 U.S. 614, 621 (1998).

appeal lacks merit.

### C. Erroneous Amount of Cocaine Base Attributed to Movant (Ground Three)

Bolden argues here that the PSR and the Court "unjustifiably, unsubstantially and unconstitutionally attributed 4.5 kilograms of cocaine base to Movant." He contends that his counsel's failure to object to these erroneous amounts constitutes ineffective assistance of counsel. Counsel cannot be faulted, however, for failing to raise an issue which lacks merit, as does this claim. As set forth above, Bolden entered into a detailed and lengthy stipulation of facts with the government which was made part of his plea agreement. The 2008 version of the United States Sentencing Guidelines Manual was used to calculate the petitioner's advisory guidelines range in this case. The base offense level for the offense of conviction is established by the drug quantity table under USSG § 2D1.1(a)(3)(c)(1). The probation officer attributed 4.5 kilograms or more of cocaine base to the petitioner, resulting in a base offense level of 38. Bolden now asserts that he was responsible only for 12.6 grams of cocaine powder in the case.

Bolden's argument is, once again, foreclosed by the record. First of all, Bolden stipulated that he conspired "with at least one other person to distribute and possess with the intent to distribute more than 50 grams . . . of cocaine base." [Doc. 40, ¶ 4]. He further stipulated that he distributed cocaine base and small amounts of powder cocaine for co-conspirator Nathaniel Allen and allowed coconspirators to use his property to distribute cocaine base and to cook powder cocaine into cocaine base. [*Id*.]. Bolden also stipulated that a cooperating individual had reported that during an 18 month period between January 2004 and July 2005 Bolden sold four to six 8-balls of crack cocaine per day for Nathaniel Allen. The same confidential informant reported that Bolden also sold powder cocaine on more than 100 occasions and that he (the CI) picked up money from Bolden and transported the drug proceeds back to

Allen. Bolden himself told the FBI agents who interviewed him that he bought 8 balls of crack from Allen on more than five occasions, that he sold cocaine base to three individuals he met through Allen, that he allowed others to use his property to cook and sell crack, and that he was paid in crack for the use of his property. The cooperating individual reported that Bolden distributed seven and one half kilograms of cocaine base for Allen. Based on Bolden's stipulation, his own statements and the statements of co-defendants, the defendant was held accountable for a total of 7.53 kilograms of cocaine base, or at least 4.5 kilograms or more for guidelines purposes.

Although Bolden now claims that there is no proof of any sales of 8-balls of cocaine base, or any other amounts for that matter, he is bound by his stipulation. He once again makes the argument that he couldn't read the PSI and had no idea the PSI was erroneously holding him responsible for the distribution and possession of 4.5 kilograms of cocaine base. Here too, the transcript of the sentencing hearing contradicts Bolden's claim. At the sentencing hearing, Bolden was asked if he had "received and reviewed with [his] attorney a copy of [the] presentence report." The defendant answered unequivocally "yes, I have." [Doc. 164, Tr. of Sent. Hrg., p. 8]. Furthermore, when the defendant was given an opportunity to allocute, he simply said "I'm sorry for what I've done . . ." and never bothered to tell the Court that he had any disagreement with the drug quantity being used to calculate his advisory guidelines range. He correctly claims that the burden was on the government to prove the type and quantity of drugs attributed to him; the government, however, reasonably relied upon Bolden's stipulation and his failure to take issue with the PSR's conclusions foreclose his argument.

### D. Adequate Factual Basis (Ground Four)

In this claim, the petitioner basically makes two arguments. First, he argues that the Court failed to comply with Rule 11(b)(1)(G) by explaining to him the nature of the charge against him and,

generally, Rule 11(b)(3) by failing to establish that there was a factual basis for the charge to which the petitioner pled guilty.

The first of these arguments, i.e. that the Court did not explain to Bolden the nature of the charge, is disputed by the record. The Court clearly identified the charge, determined that petitioner's attorney had explained to him the nature and meaning of the charge against him, outlined the elements of the offense to which Bolden was pleading guilty and obtained an affirmative acknowledgment from him that he understood those elements. Interestingly, the government was only required to prove as an element of the offense that the conspiracy involved 50 grams or more of cocaine base, not 4.5 kilograms, and this amount was stipulated to clearly by Bolden. For sentencing purposes, even if the amount had been contested, the government would only have been required to prove the quantity by a preponderance of the evidence and Bolden's stipulations and the co-defendant statements are sufficient to meet that standard.

Bolden makes one other more specific argument in his memorandum. He essentially claims that he did not understand the concept of intent to distribute, conspiracy to distribute or distribute itself and that the Court's failure to address those specific issues with him entitles him to relief. He faults counsel for not objecting to the Court's alleged inadequate inquiry.

Once again, the record establishes that Bolden's claim lacks merit. Bolden was specifically advised by the Court of each and every element of the offense which the United States was required to prove before he could be convicted. He was advised that the government must prove "[f]irst that two or more persons either directly or indirectly reached an agreement to distribute and to possess with the intent to distribute cocaine base or crack cocaine; second, that [he] knew of the unlawful purpose of the agreement; third, that [he] joined in the agreement willfully, that is with the intent to further its unlawful

purpose; and, fourth, that the overall scope of the conspiracy involved 50 grams or more of cocaine base." [Doc. 164, Tr. of Sent. Hrg., pp. 7-8]. Bolden does not argue that the Court's recitation of the elements of the offense was incorrect; indeed, he cannot. He simply argues that he did not understand the concept of intent to distribute or the meaning of conspiracy or distribute. First of all, the Court did not refer to a conspiracy but rather used the more colloquial term "agreement." The Court further advised the petitioner that the agreement could be direct or indirect. Secondly, while Bolden correctly argues that intent is a critical element of the offense and that he must be given notice of that element, the Court complied with that requirement.

"Intent" is a simple and easily understood term. The Sixth Circuit has held that the crime of conspiracy to possess cocaine with intent to distribute is a simple crime, *United States v. Ferguson*, 132 F.3d 34, 1997 WL 764471, at *4 (6th Cir. Dec. 3, 1997), and that the district court summary of the required elements of the crime, along with an acknowledgment of guilt, is sufficient to establish a factual basis. *United States v. Valdez*, 362 F.3d 903 (6th Cir. 2004). Here, the defendant's crime was not complex, his guilty plea complied with Rule 11, and he was provided with a sufficient summary of the charge against him. *Id.* at 910. The same is true with respect to the term "distribute." The term is a simple one and is given its plain and ordinary meaning. No special instruction to the defendant about the meaning of the term is required. Furthermore, the petitioner clearly and unequivocally acknowledged that he understood the required elements of the crime to which he pled guilty and that his attorney explained those elements to him "the meaning of all words used in [the] indictment about which [he] had any questions." [Doc. 164, Tr. of COP, p. 6]. This issue lacks merit.

E.    **The Mandatory Minimum Sentence (Ground Five)**

In this claim, Bolden "challenges the imposition of a 180 month mandatory minimum sentence

28

as constitutionally infirm, arbitrary and disproportionate." It is difficult to understand the claim Bolden makes here. He was subject to a mandatory minimum term of ten years, not fifteen as he states. The sentence selected by the district court was 30 months below the bottom of the applicable advisory guideline range. Although Bolden suggests that the sentence was unreasonable, the below guideline sentence would be afforded a presumption of reasonableness on appeal. To the extent Bolden argues that mandatory minimum sentences violate due process, that issue has been squarely addressed and decided by the Sixth Circuit. The court held that mandatory minimum sentences are not unconstitutional in *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991) and has reaffirmed the constitutionality of mandatory minimum sentences post-*Booker*. *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007) ("although *Booker* gave substantial discretion to the sentencing court to impose sentences below a mandatory maximum, nothing in *Booker* allows the court to negate the imposition of a mandatory minimum sentence."). Bolden's claim lacks merit.

### F.  Failure to Review the PSR (Ground Six)

In this claim, Bolden "emphatically contends" that trial counsel was ineffective "when he failed to review the PSI with his client prior to his sentencing hearing on April 27, 2009." As with other of Bolden's claims, this argument is likewise foreclosed by the record. As noted above, Bolden was specifically asked by the Court at the sentencing hearing if he had "received and reviewed with his attorney a copy" of the PSR. His answer was an unequivocal "yes." Although Bolden now contends otherwise, he is bound by his prior representation to the Court. This issue lacks merit.

## IV.  Conclusion

For the reasons set forth herein, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and the case DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurors would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

As noted above, an attorney was appointed by the Court to represent the petitioner at the evidentiary hearing. Given the dismissal of the petition and denial of a certificate of appealability, the appointment of Sandra B. Jelovsek, Esq. as the attorney for the petitioner is TERMINATED.

A separate judgment will enter.

ENTER:                                                    s/J. RONNIE GREER
                                              UNITED STATES DISTRICT JUDGE